**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| Mary Hazelton, derivatively on behalf of Nominal Defendant Hampshire Group, Limited, <br><br> Plaintiff, <br><br> v. <br><br> Ludwig Kuttner, Joel Goldberg, Michael C. Jackson, Harvey L. Sperry, Roger Clark, Irwin W. Winter, and Charles Clayton, <br><br> Defendants, <br><br> and <br><br> Hampshire Group, Limited, <br><br> Nominal Defendant. | C/A No. 08:06-cv-02063-GRA <br><br><br> **ORDER** <br> (Written Opinion) |

This matter comes before the Court on Defendants' motions to dismiss Plaintiff's Second Amended Verified Shareholder Derivative Complaint (the "Second Amended Complaint") based on Fed. R. Civ. P. 12(b)(6) and 23.1. After reviewing the Second Amended Complaint, Defendants' motions, the briefs and arguments presented by the parties, and the remainder of the record in this case, the Court hereby grants Defendants' motions to dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, a shareholder of Hampshire Group, Limited ("Hampshire" or "the Company"), filed this shareholder derivative suit on July 18, 2006. Defendants moved to dismiss the suit on September 26, 2006 for Plaintiff's failure to first make a demand on the Board of Directors of Hampshire or adequately plead why making

1

demand would have been futile pursuant to Fed. R. Civ. P. 23.1.  In response to Defendants' motions, Plaintiff amended her complaint in an attempt to plead demand futility.  Defendants once again moved to dismiss based on Plaintiff's failure to adequately plead demand futility pursuant to Fed. R. Civ. P. 23.1.  The Court held oral arguments on Defendants' motions to dismiss the First Amended Complaint on December 28, 2006.  At oral arguments, the Court granted Plaintiff an additional fifteen days to amend her complaint to plead with further specificity futility of demand as required by Fed. R. Civ. P. 23.1.  Plaintiff filed the Second Amended Complaint on January 10, 2007.  Defendants have now moved to dismiss Plaintiff's Second Amended Complaint.

The Second Amended Complaint names as Defendants the Company's Board of Directors: Ludwig Kuttner, the Company's former Chief Executive Officer;  Joel Goldberg; Michael C. Jackson; Harvey L. Sperry; and Irwin W. Winter.  Plaintiff also names Roger Clark and Charles Clayton, Hampshire executives, as Defendants in this action.  Defendants Kuttner, Clark, and Clayton ("Officer Defendants") were all placed on administrative leave pending an internal investigation by Hampshire's Audit Committee.  Kuttner and Clayton have subsequently been terminated from their positions with the Company.  Defendants Goldberg, Jackson, Sperry, and Winter ("Director Defendants") still hold positions on the Board of Directors and are represented by separate counsel from the Officer Defendants.  All Defendants, including Nominal Defendant Hampshire Group, Limited, have filed motions to dismiss the Second Amended Complaint.

The primary allegation in the Second Amended Complaint is that the Directors failed in their "duty of oversight." Sec. Am. Compl., ¶21.  This allegation is premised upon alleged events at the Company, beginning with the announcement on June 22, 2006 that the Audit Committee of the Board of Directors decided "to investigate issues, related to, among other things, the misuse and misappropriation of assets for personal benefit, certain related party transactions, tax reporting, internal control

2

deficiencies and financial reporting and accounting for expense reimbursements, in each case involving certain members of Hampshire's senior management." *Id.* at ¶22. The Second Amended Complaint further alleges that the Audit Committee investigation resulted in the termination of Kuttner's employment for submitting false and fraudulent expense reports. *Id.* at ¶30. Additionally, as a result of the Audit Committee investigation, Plaintiff alleges the Company delayed filing quarterly and annual financials with the SEC, resulting in a risk of the Company being delisted from NASDAQ and having to renegotiate certain loan agreements. *Id*. at ¶¶24-27, 29, 32. In addition, the Second Amended Complaint alleges that the Company announced it will restate its financials for the years 2003 through 2005 and the first quarter of 2006, and may be required to pay additional amounts related to taxes for these periods. *Id.* at ¶33-34.

In the Second Amended Complaint, Plaintiff alleges that she did not make a pre-suit demand on the Board because demand would have been futile due to the Directors' substantial likelihood of liability. *Id.* at ¶¶ 36-37, 39-42. In essence, Plaintiff alleges that the Director Defendants either knew or should have known about the problems uncovered by the Audit Committee investigation before the investigation began and should face liability for their failure to address the problems sooner. Additionally, Plaintiff alleges that demand would be futile because the Director Defendants lack independence as a result of Kuttner's ownership of 33.25% of the Company's shares, the Board's approval of transactions involving Kuttner, and the Company's indemnification of the Director Defendants.

## ANALYSIS

### I.    Rule 23.1 and Demand Futility.

Defendants have moved to dismiss this action based on Plaintiff's failure to meet the requirements of Fed. R. Civ. P. 23.1 in bringing this shareholder derivative suit. Fed. R. Civ. P. 23.1 requires that in a shareholder derivative suit, "[t]he complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff

3

to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." The requirements of this rule are so stringent because shareholder derivative suits "impinge on the inherent role of corporate management to conduct the affairs of the corporation." *Carolina First Corp. v. Whittle*, 343 S.C. 176, 187, 539 S.E. 2d 402, 408 (Ct. App. 2000). Shareholders may only take the extraordinary step of bringing a derivative action where they have made a demand on the board (which the board refused), or where they have sufficiently alleged facts in the complaint to support a claim that such a demand would be futile. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) ("as a 'precondition for the [shareholder derivative] suit' . . . the shareholder [must] demonstrate that 'the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'") (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). Thus, it is a plaintiff's burden to allege, with factual particularity, why a demand on the board should be excused. *See Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) ("pleadings [in a derivative suit] must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings"); *see also Carolina First*, 343 S.C. at192, 539 S.E.2d at 411 (Ct. App. 2000) ("[s]hareholders [have] the burden of alleging particularized facts to support the assertion that demand would have been futile"). "Conclusory allegations of fact or law which are not supported by allegations of specific fact may not be taken as true" for these purposes. *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991) (internal quotation marks and alterations omitted), *overruled on other grounds by Brehm,* 746 A.2d at 253-54.

For derivative claims brought in federal court, federal law addresses the adequacy of the pleading, while the law of the state of incorporation establishes the substantive requirements of a pre-suit demand on the company's board of directors. *See Kamen*, 500 U.S. at 108-09; *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992). "In other words, the inquiry is whether plaintiff's complaint 'states with

4

particularity (federal procedural requirement under Rule 23.1) facts which would excuse a demand upon the directors as futile under corporate law (state substantive law).'" *Wencoast Restaurants, Inc. v. Chart Capital Partners, L.P.*, No. 2:05-1650-18, 2:05-1651-18, 2006 U.S. Dist. LEXIS 11507, at *8 (D.S.C. Feb. 28, 2006) (quoting *Starrels v. First Nat. Bank of Chicago*, 870 F.2d 1168, 1170 (7th Cir. 1989)). Since Hampshire Group is a Delaware corporation, Delaware law governs the substantive requirements for excusing a lack of demand.

Under Delaware law, the "demand" requirement that the shareholder seek action from the corporation itself before bringing a derivative suit is premised on the "cardinal precept . . . that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm,* 746 A.2d at 254. Thus, to satisfy the heightened pleading requirements of Fed. R. Civ. Proc. 23.1 for demand futility, the Second Amended Complaint must include particular facts creating a reasonable doubt that the majority of the Board is either (i) disinterested or (ii) independent. *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).[1] Defendants argue that Plaintiff's Second Amended Complaint fails to plead particular facts that adequately establish reasonable doubt as to the Director Defendants' disinterestedness or independence.

## II.     The Director Defendants Are Disinterested.

Under Delaware law, directors who are sued for a failure of oversight "have a disabling interest when 'the potential for liability is not "a mere threat" but instead may rise to "a substantial likelihood".'" *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1269 (Del. Ch. 1995) (quoting *Rales,* 634 A.2d at 936). "Since a plaintiff must plead with particularity reasons why demand should be excused, when a reason is that

---

[1] *Rales* is the appropriate analysis here given that the Second Amended Complaint's general allegations relate to an alleged failure of oversight, and not to a "specific business judgment of the board." *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003) (applying the *Rales* test where complaint alleged insider trading and failure-of-oversight claims).

5

the directors are disabled by the risk of liability, the claim for relief against the directors must also be pled with particularity." *Baxter*, 654 A.2d at 1270; *see also Guttman v. Huang*, 823 A.2d 492, 502 (Del Ch. 2003).  The Second Amended Complaint fails to plead facts suggesting any likelihood of liability on the part of the Outside Directors because it fails to plead the alleged failure of oversight with any particularity.

Pleading a failure of oversight claim with particularity is no easy task, as such a claim "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  Directors cannot be held liable on this type of claim unless either "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (emphasis in original).  Indeed, a derivative complaint must identify particular warning signs or "red flags" that were ignored by the board to plead a failure of oversight. *See Baxter*, 654 A.2d at 1270-71 ("Plaintiff has not pled with particularity that the directors ignored obvious danger signs of employee wrongdoing.").

Here, the Second Amended Complaint alleges no facts indicating the "sustained or systematic failure of the board to exercise oversight" required under Delaware law. *Stone*, 911 A.2d at 372 (internal quotation marks omitted).  For example, the Second Amended Complaint contains neither specific details regarding the company's internal controls nor particularized allegations regarding information or warning signs that had been brought to the attention of the Director Defendants.  Moreover, while the Second Amended Complaint recognizes that there was an Audit Committee and that Goldberg, Sperry and Winter were on that committee, it says nothing about the committee's meetings, actions or its knowledge of relevant issues prior to the investigation. *See Guttman*, 823 A.2d at 507.  Instead, it contains the conclusory allegation that "the Audit Committee either failed to create any internal controls, or so utterly failed in their

6

duty to enforce and/or oversee these internal controls, that they are exposed to a substantial threat of liability in this action." Sec. Am. Compl., ¶41. The Court finds such conclusory allegations are insufficient to state a failure of oversight claim with particularity.

In addition, the exculpatory provision in Hampshire's certificate of incorporation further precludes Plaintiff from demonstrating that the Director Defendants face a substantial likelihood of liability. "When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *Baxter*, 654 A.2d at 1270.

Hampshire's certificate of incorporation contains a provision indemnifying the directors for breaches of their fiduciary duty of care.[2] Thus, even if the Second Amended Complaint offered particular facts sufficient to establish a duty of care claim, it would still fail as it includes no allegations of bad faith, intentional misconduct, knowing violation of the law, or any other conduct for which the Director Defendants could actually be liable.

### III.     The Director Defendants Are Independent.

The Second Amended Complaint also fails to satisfy the second part of the Delaware test for demand futility, as it fails to raise any doubts as to the Director Defendants' independence. In the context of demand futility, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984), *overruled on other grounds by Brehm*, 746 A.2d at 254. A director may lack independence if she is dominated or controlled by another member

---

[2]   HGL Certificate of Amendment of Restated Certificate of Incorporation at 3-4.

7

of the board who is not disinterested.  *See id.*; *Rales*, 634 A.2d at 936.

Even assuming that the allegations in the Second Amended Complaint are sufficient to question whether Kuttner is disinterested, the Court must then determine whether the Director Defendants, who clearly constitute a majority of the board, are independent from Kuttner such that they could separately evaluate a pre-suit demand. The Second Amended Complaint asserts three bases for the Director Defendants' alleged lack of independence:  (i) Kuttner's ownership of 33.25% of the Company's stock; (ii) the Board's approval of transactions involving Kuttner; and (iii) the Company's indemnification of the Director Defendants pursuant to Delaware law.

As to Kuttner's stock ownership, courts have repeatedly held that large shareholders do not control or dominate the board merely as a result of their stock holdings.  *See Beam v. Stewart*, 845 A.2d 1040, 1054 (Del. 2004) (94% stockholder's control of a corporation did not excuse pre-suit demand).  Further, the Board's approval of everyday business transactions that involved Kuttner (*e.g.*, a lease of a building)[3] likewise does not call into question any of the Director Defendants' independence.  "In Delaware mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand."  *See Aronson*, 473 A.2d at 817.  Finally, as to the alleged indemnification agreements between the Company and the Director Defendants, the Company's certificate of incorporation states that the Company "shall indemnify" the directors "to the fullest extent permitted under and in accordance with the laws of the State of Delaware."[4]  By entering into agreements memorializing the Company's indemnification obligation, the Company and the Director Defendants in no way undermined the Directors' independence.  *See Grobow v. Perot,* 526 A.2d 914,

---

[3]     Sec. Am. Compl. ¶ 46.

[4] HGL Certificate of Amendment of Restated Certificate of Incorporation at 3-4.

924 n.14 (Del. Ch. 1987) ("it would be incorrect to conclude that the mere presence of the indemnity provision in the buy-out agreement would preordain that the Board would reject a demand that otherwise had merit."), *overruled on other grounds by Brehm,* 746 A.2d at 254.

In the end, Plaintiff has failed to plead demand futility, as nothing in the Amended Complaint "create[s] a reasonable doubt that, as of the time the complaint [was] filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934. Because the Second Amended Complaint fails to meet the pleading requirements of Fed. R. Civ. P. 23.1, Defendants' remaining arguments are considered moot and need not be addressed by the Court.

## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Defendants' motions to dismiss are hereby GRANTED, and that this case be DISMISSED without prejudice.

IT IS SO ORDERED.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

April 13 , 2007
Anderson, South Carolina

9